577 So.2d 613 (1991)
Ernest R. BRYANT, Appellant,
v.
CSX TRANSPORTATION, INC., a Corporation, Appellee.
No. 89-1371.
District Court of Appeal of Florida, First District.
March 18, 1991.
Rehearing Denied May 1, 1991.
*614 Beckham & McAliley, P.A., Jacksonville, Joel D. Eaton of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, for appellant.
E. Dale Joyner of Taylor, Moseley & Joyner, Jacksonville, for appellee.
SMITH, Judge.
Bryant, a railroad employee, filed suit against the railroad for injuries he received when a coemployee threw a cherry bomb into a line shack he was occupying. The trial resulted in a directed verdict on his claim that the railroad was vicariously liable, and a jury verdict finding in favor of the railroad on his negligence claim. Bryant contends on appeal that the trial court erred in directing a verdict, and in denying his motion for new trial. We affirm.
Bryant was employed in the railroad's Hamlet, North Carolina yard, a rather large yard covering over 535 acres. On September 12, 1986, Bryant was sitting in a shack in the yard when a coemployee, Billy Dunn, threw a cherry bomb into the shack. Dunn testified that this was the first time that he ever engaged in such a prank. Several others testified that they had never heard of Dunn committing such an act before and that Dunn was not known as a prankster. Dunn was suspended for 15 days for the prank.
Bryant claimed that he suffered a hearing loss as a result of this incident and brought suit, alleging that the railroad was vicariously liable for his injuries on the theory of respondeat superior, and that the railroad was negligent for failing to provide a safe place to work.
Evidence at the trial revealed that railroad rules prohibit pranks like the one involved in this case, and further established that railroad employees are supposed to report conditions which could endanger people or property. Bryant produced evidence from railroad employees that explosion of torpedoes or fireworks in the yard was common. However, most of the employees testified that they did not report these incidents to their supervisors. On the other hand, the railroad introduced evidence from several railroad supervisors that they were unaware that firecrackers or torpedoes were being exploded. They concurred that such incidents had not been reported to them.
Finally, the medical testimony was conflicting. While Bryant produced evidence that he suffered a permanent injury as a result of the cherry bomb explosion, the railroad produced persuasive medical testimony that Bryant had a pre-existing hearing loss due to firing 90mm tank guns during military duty, and that the cherry *615 bomb explosion did not result in any additional hearing loss.
At the close of Bryant's case, the railroad moved for a directed verdict in its favor on Bryant's claim that the railroad was vicariously liable for Dunn's act, which the trial court granted. The trial court ruled that Dunn was not acting in the course and scope of his employment when he threw the cherry bomb. The negligence claim went to the jury.
The jury was instructed that it could find for Bryant if it determined that the railroad negligently failed to exercise reasonable care to provide him with a reasonably safe place to work, and negligently permitted employees to bring cherry bombs and other explosive devices on the railroad premises; and if such negligence was found, that this negligence was a legal cause, in whole or in part, of injuries sustained by Bryant. The court specifically instructed the jury that when Dunn threw the firecracker, he was not acting in the course and scope of his employment nor was he furthering the business of the railroad.
On appeal, Bryant contends the trial court erred, in ruling that he could not recover under a respondeat superior theory, because he was not required to prove that Dunn's act was in the course and scope of his employment in order to recover. Alternatively, Bryant argues that even if Dunn's act was required to be committed within the scope of his employment, the jury could have found that this requirement was met because of the evidence that Dunn's act was impliedly authorized by the railroad. Bryant admits that the railroad had rules prohibiting this type of conduct; but he contends that he presented sufficient evidence that pranks involving explosive devices were common in the yard, and that the railroad was on notice of them. He argues that it was inferable that the railroad acquiesced in these violations of the rules and impliedly authorized similar conduct by employees as a method of letting off steam and supporting morale. Lastly, Bryant argues, the trial court should have granted a new trial on his direct negligence count because there is no reasonable version of the evidence which supports a verdict entirely exonerating the railroad.
In actions involving injury due to pranks or horseplay by a fellow employee, as in actions for injury to an employee due to the intentional act of another employee, there are two theories of recovery  the direct negligence theory and the theory of respondeat superior. In order to recover under the theory of respondeat superior, the injured employee must show that his coemployee was acting in the course and scope of his employment and in furtherance of the work of the employer's business. Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082 (1930); Lancaster v. Norfolk and Western Ry. Co., 773 F.2d 807 (7th Cir.1985); Copeland v. St. Louis-San Francisco Ry. Co., 291 F.2d 119 (10th Cir.1961); Hoyt v. Thompson, 174 F.2d 284 (7th Cir.1949).
Recovery under the respondeat superior theory is usually limited to those circumstances in which the injurious act is committed by the plaintiff's superior and results from the actor's dissatisfaction with some aspect of a plaintiff's work. Recovery cannot be had where the injurious act is for the sole purpose of satisfying the temper or spite of the assaulting employee or for the sole purpose of satisfying some personal desire to perpetrate a practical joke. Annot. Employer's liability, under Federal Employers' Liability Act or Jones Act, to employee injured by intentional act of another employee, 33 A.L.R.2d 1295 (1954).
We agree that the trial court correctly directed a verdict on the vicarious liability claim since there was no evidence that Dunn's actions were in the course and scope of his employment or in furtherance of the railroad's business. A factually similar case deserves mention. In Goupiel v. Grand Trunk Ry. Co., 96 Vt. 191, 118 A. 586 (1922), a fellow employee placed a torpedo in front of the wheels of the train engine, and then motioned the engineer to start up; the engine ran over the torpedo, exploding it, and plaintiff was hit by a *616 flying piece of its metallic casing. After a second trial resulted in a jury verdict in favor of the plaintiff, the railroad appealed. The Supreme Court of Vermont reversed, pointing out that the actions of plaintiff's coemployees which resulted in injury to him were neither in the course of their employment nor in the furtherance of their employer's business. The court commented that if the engineer had moved his engine forward to facilitate the work of the company, with knowledge that the torpedo was on the rail and that plaintiff was dangerously near, his negligence would have been within the scope of his employment and the employer would have been liable. The court noted, however, that these were not the facts, but, instead, it was clear that the sole purpose of the engineer was to explode the torpedo in order to startle the plaintiff and make him jump.
Bryant's reliance on the decision in Baker v. Baltimore & Ohio Railroad Co., 502 F.2d 638 (6th Cir.1974) is misplaced. In Baker, the employee removed his coat from a resting place on the candy machine, apparently in preparation to go to another job assignment, when a gun fell from the coat, discharged, and caused injury. The case involved the negligence of a fellow employee and does not involve the intentional injury of one employee by another; nor did it involve an employee's "sportive" act.
Concerning Bryant's contention that the railroad impliedly authorized Dunn to explode the firecracker by failing to enforce its rules, there was no evidence supporting this theory. The railroad argues, and we agree, that Bryant has confused the claim of negligently failing to enforce rules and to provide a reasonable safe place to work, which was submitted to the jury, with authorization, either express or implied, to perform a dangerous act, which was not.
Regarding the direct negligence theory, the jury was properly instructed that it should find the railroad negligent if the railroad failed to take reasonable steps to prevent reasonably foreseeable danger to its employee from the intentional horseplay or misconduct of another employee. Harrison v. Missouri Pacific Railroad Co., 372 U.S. 248, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963); Lancaster v. Norfolk & Western Ry. Co., 773 F.2d 807 (7th Cir.1985); Naidoo v. Union Pacific R. Co., 224 Neb. 853, 402 N.W.2d 653 (1987). The evidence was conflicting on the critical issues: the railroad's knowledge of the risk of an employee throwing a firecracker into a closed room; whether this risk had been brought to the attention of the railroad; the reasonableness of the railroad's actions in responding, or not responding to the problem, if any; and whether Bryant suffered injury caused in whole or in part from this cherry bomb incident. The jury was free to accept or reject the evidence and to determine the credibility of witnesses, and the jury resolved these conflicts in favor of the railroad.
AFFIRMED.
BOOTH, J., concurs.
ZEHMER, J., dissents with opinion.
ZEHMER, Judge (dissenting).
I concede this is a close case on the issues for the jury. However, I do not agree that the trial court's directed verdict on the issue of respondeat superior was not reversible error. This case is governed by federal law, and both the trial court and this court, in my view, have erroneously distinguished the governing federal law as interpreted and applied in Baker v. Baltimore & Ohio Railroad Co., 502 F.2d 638 (6th Cir.1974), on the grounds that the employee's conduct in Baker was merely negligent while Dunn's conduct in this case amounted to "an intentional injury of one employee by another." The evidence in this case does not support the classification of Dunn's conduct as "an intentional injury" as a matter of law. While I find it difficult to characterize Dunn's testimony, or any other evidence of record, as supporting an "intentional injury" theory, at the very least whether this was an intentional injury was a question of fact for the jury improperly withdrawn from the jury's consideration by the preemptive instruction on respondeat superior. Moreover, the trial *617 court's preemptive instruction taking the respondeat superior issue from the jury apparently had a significant influence on the jury's decision on the surviving charge of negligence that requires, in the interest of fairness, a new trial on all issues. Therefore, I respectfully dissent.