Mary Jane KELLY, Plaintiff,

v.

METRO–NORTH COMMUTER RAILROAD and "Jane Doe", name fictitious, true name unknown to plaintiff, Defendants.

No. 96 Civ. 6446(PKL).

United States District Court,
S.D. New York.

Jan. 6, 1999.

Philip J. Dinhofer, New York City, for Plaintiff.

Jose R. Rios, Metro–North Commuter Railroad Company, New York City, for Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff brings this action based on an alleged assault upon her on a Metro–North Commuter Railroad ("Metro–North") train while traveling to her job at the Metro–North office in Grand Central Terminal in New York City. Plaintiff avers claims under 42 U.S.C. § 1983, the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51, *et seq.*, and pursuant to state statutory and common law. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendant Metro–North moves for summary judgment as to all counts.

For the reasons stated in this Opinion, defendant Metro–North's motion is GRANTED in part and DENIED in part.

## I.  Standard for Summary Judgment

A moving party is entitled to summary judgment if the Court determines no genuine issue of material fact exists to be tried and the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *see also Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The moving party bears the burden of showing no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citation omitted); *see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 81 F.3d 1224, 1231 (2d Cir.1996).

The Court's function in adjudicating summary judgment motions is not to try issues of fact, but instead to determine whether there are such issues. *See Sutera v. Schering Corp.,* 73 F.3d 13, 15–16 (2d Cir.1995).  In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Holt,* 95 F.3d at 129.

## II.  Facts of the Case

Applying the principles set forth above, the relevant facts in the instant case are as follows.  On Sunday, August 27, 1995, plaintiff prepared to board the 12:57 p.m. Metro–North train from New Haven, Connecticut, to Grand Central Terminal, where plaintiff worked for Metro–North as a clerk in the Station Master's Office.  As was her usual practice, plaintiff walked along the platform to the last two train cars where she could gain special access to the train using a key provided to her as part of her employment.  At that time, the doors of all of the train cars were locked

and could only be accessed by Metro–North employees.

As plaintiff was approaching the relevant train car, two women walking in front of her reached the car first and "keyed" open the train doors. At the time, plaintiff recognized one of the women as a Metro–North employee. Plaintiff has subsequently identified the other woman as Samantha Byrd, also a Metro–North employee.

Plaintiff began to board the train behind the women when Byrd turned and elbowed plaintiff in the chest. Plaintiff tried to regain her balance and enter the train, but was pushed away by Byrd. Byrd told plaintiff, "You cannot get on this train, I'm responsible for who gets on and off this train." When plaintiff eventually entered the train and attempted to walk toward the end of the train car away from Byrd, Byrd followed plaintiff and told her, "Somebody should teach you some manners." Plaintiff showed Byrd plaintiff's Metro–North employee railroad pass and asked Byrd whether she had a pass. Byrd responded that she had a "key" to the train.

Plaintiff later located the train conductor and described the incident and the women. Upon arrival at Grand Central Terminal, plaintiff reported the incident to the police and provided a voluntary statement of the details of the incident.

On August 23, 1996, plaintiff brought this action against Metro–North and against an unknown individual identified as "Jane Doe", who plaintiff has in the course of discovery identified as Byrd. As of May 1998, Byrd had not been formally named as a defendant or served with a copy of the complaint. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated May 31, 1998, at 3 [hereinafter "Opposition"]. The motion before the Court is solely by Metro–North, for summary judgment in its favor.

## III. Discussion

### A. *Claim Pursuant to 42 U.S.C. § 1983*

Plaintiff avers a cause of action pursuant to 42 U.S.C. § 1983 based on defendants' alleged violation of her Fourth and Fourteenth Amendment right against unreasonable search and seizure and her rights to due process and equal protection under the Fifth and Fourteenth Amendments, as applicable. Assuming, without deciding, that Metro–North is a municipal entity constituting a "person" within the meaning of § 1983, plaintiff's claim must nonetheless fail because plaintiff has not raised a genuine issue of material fact that Metro–North was the "moving force" underlying plaintiff's alleged injury.

It is well-settled that liability may not be found against a municipal entity under § 1983 based on a theory of respondeat superior. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Spencer v. Doe*, 139 F.3d 107, 111 (2d Cir.1998). Instead, a plaintiff must prove at least that the municipal entity was the "moving force" behind the wrongdoing, *Bryan County*, 117 S.Ct. at 1388, either by showing (i) that the conduct of which plaintiff complains was directly "undertaken by a municipal policymaker", *Annis v. County of Westchester*, 136 F.3d 239, 248 (2d Cir.1998), that is, by an employee of Metro–North who has final policymaking authority regarding a particular relevant issue, *see McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 1737, 138 L.Ed.2d 1 (1997), or (ii) that the alleged misconduct occurred as a direct result of the individual defendant's compliance with an official policy or custom, such as a policy entailing inadequate training or supervision, *see Bryan County*, 117 S.Ct. at 1388.

Plaintiff has failed to establish an issue of material fact as to this element of

her § 1983 claim. Plaintiff concedes that she "does not assert a *Monell* type § 1983 claim in this lawsuit. No official policy or custom is claimed by her complaint." Opposition at 4. Moreover, even·if the above concession reflects a mistaken belief by plaintiff that *Monell* claims may not be premised on the actions of a final policymaker, plaintiff's complaint and the evidence submitted cannot reasonably be construed to suggest a final policymaker was involved in the incident. Absent such allegations and at least some accompanying evidence, plaintiff's putative § 1983 claim is simply an impermissible claim for respondeat superior liability. Summary judgment in favor of defendant Metro–North on this claim is, therefore, appropriate. In addition, to the extent plaintiff purports to assert a § 1983 claim against "Jane Doe", a/k/a Samantha Byrd, in her official capacity, judgment is also granted on that claim, since "[a] claim against a government officer in [her] official capacity is, and should be treated as, a claim against the entity that employs the officer". *Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir.1997).

**B.** *Claim Pursuant to the Federal Employers' Liability Act*

■ Plaintiff also asserts a claim against Metro–North pursuant to the Federal Employers' Liability Act. FELA provides in pertinent part:

> Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . .

45 U.S.C. § 51.[1]

■ Before proceeding to an assessment of Metro–North's specific arguments regarding plaintiff's FELA claim, it is worth stating the basic liability principles underlying FELA. FELA is a broad remedial statute which has been given a liberal construction by courts in order to accomplish its goals. *See Metro–North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 117 S.Ct. 2113, 2117, 138 L.Ed.2d 560 (1997); *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). The Act imposes liability on railroads either for direct negligence (such as negligent maintenance or supervision) or for negligent acts by its employees, based on the doctrine of respondeat superior. *See* 45 U.S.C. § 51; *see also Masiello v. Metro–North Commuter Railroad Co.*, 748 F.Supp. 199, 206 (S.D.N.Y.1990). With respect to the traditional common-law negligence elements embodied in FELA, such as the elements of duty, foreseeability and causation, the proof requirements under FELA are substantially relaxed as compared with common-law negligence claims, so as to promote submission of FELA claims to a jury for decision. *See Goldwater v. Metro–North Commuter Railroad*, 101 F.3d 296, 298 (2d Cir.1996); *Gallose v. Long Island R.R. Co.*, 878 F.2d 80, 84 (2d Cir.1989); *Johannessen v. Gulf Trading & Transp. Co.*, 633 F.2d 653, 656 (2d Cir. 1980). Thus, for example, whether an employee was acting within the scope of employment at the time of the incident is generally "to be resolved by [a] jury", *Goldwater*, 101 F.3d at 298 (internal quotation marks omitted), causation may be found where "employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought", *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), and foreseeability "is no less a matter generally left to the jury's broad

---

1. As is evident from the statutory language, FELA imposes liability only on the rail carrier, not on individual employees. *See Lee v. Transportation Communications Union*, 734 F.Supp. 578, 580 (E.D.N.Y.1990). Accordingly, to the extent plaintiff asserts a FELA cause of action against the individual defendant, that defendant is entitled to judgment as a matter of law on the claim.

decision than any other part of the requisite proof", *Burns v. Penn Cent. Co.*, 519 F.2d 512, 514 (2d Cir.1975).

■ In addition, although FELA does not specifically mention liability premised on the commission of intentional torts, the Act has been construed to allow recovery for several such torts, including assault. *See Buell*, 480 U.S. at 562 n. 8, 107 S.Ct. 1410; *Harrison v. Missouri Pac. R. Co.*, 372 U.S. 248, 248–49, 83 S.Ct. 690, 9 L.Ed.2d 711 (1963); *Visconti v. Consolidated Rail Corp.*, 801 F.Supp. 1200, 1208 (S.D.N.Y.1992). Like FELA-based negligence causes of action, a claim under FELA involving an intentional tort may be premised on a theory of respondeat superior. *See Mack v. Metro–North Commuter R.R.*, 878 F.Supp. 673, 677 (S.D.N.Y.1995); *see also Lancaster v. Norfolk & Western Railway Co.*, 773 F.2d 807, 818 (7th Cir. 1985) (Posner, J.).

Metro–North asserts it is entitled to judgment on plaintiff's FELA claim because (i) plaintiff was not acting within the scope of her employment at the time of the injury, (ii) plaintiff's assailant was not acting within the scope of her employment during the incident, and (iii) the alleged assault was not reasonably foreseeable by Metro–North. With the aforesaid principles in mind, the Court turns to consideration of Metro–North's arguments.

### 1. *The "Commuter" Rule*

Metro–North asserts it is entitled to judgment because there is allegedly no genuine issue of material fact that plaintiff was not acting within the scope of her employment at the time her injuries occurred but was, instead, merely a commuter on Metro–North traveling to her place of work.

■ Metro–North is correct that plaintiff must prove she was acting within the scope of her employment at the time of the injury. *See Goldwater*, 101 F.3d at 298. Metro–North is further correct to note that courts have fashioned a so-called "commuter" exception to FELA liability in this respect, which provides that the scope of employment "generally speaking . . . does not include either going to or coming away from the place where the job is carried on." *Id.* at 298 (internal quotation marks omitted).

The United States Court of Appeals for the Second Circuit has recently held, however, that application of the "commuter" exception, like other issues involved in assessing FELA claims, "is usually a factual question" to be submitted to a jury for resolution, since a variety of fact-specific indicia may be relevant, including the nature of the plaintiff's employment; the time of day employment begins; the employer's involvement in facilitating the plaintiff's use of the employer's transportation; and whether means of transportation other than the employer's railroad are readily available. *See id.* at 299–300.

■ Considering these factors, · and given that "the jury's power to draw inferences is greater [in a FELA action] than in common-law actions", *Burns*, 519 F.2d at 514 (internal quotation marks omitted), the Court finds genuine issues of material fact exist as to whether the "commuter" exception applies in this case. The facts, shown in the light most favorable to plaintiff, indicate that plaintiff was traveling to work on the Sunday of the Labor Day holiday weekend and that the most (and, perhaps, only) feasible means of traveling to her office that day was on a Metro–North train. In addition, Metro–North had provided plaintiff with a key to gain special access to its trains prior to public boarding and with a pass which constitutes proof of her employment and of her entitlement to free travel when using the trains. Plaintiff was, moreover, attempting to gain access with other employees to a section of the train made off-limits to the public with some frequency and which may have only been open to employees on the relevant day. Given the apparent lack of a readily-available alternative form of transportation and Metro–North's seemingly strong in-

centives for employees both to use Metro–North trains and to travel in a specific (and, possibly, segregated) area of the train, a jury could reasonably find plaintiff's employment began upon her arrival at, or entry of, the train. Consequently, the facts raise a genuine issue as to whether plaintiff should be considered to have been acting within the scope of her employment at the time of the incident. Accordingly, summary judgment in favor of Metro–North on this issue would be inappropriate.

### 2. *Scope of the Assailant's Employment*

■ Under FELA, "not only must the injured employee be acting within the scope of employment at the time of injury ..., but the employee whose conduct causes the injury must also be acting within the scope of his employment." *Gallose,* 878 F.2d at 83 (emphasis omitted). The key inquiry regarding the latter issue is whether it appears the alleged tortfeasor was attempting to act in furtherance of the employer's business or, instead, was motivated solely by personal interests, such as a delight in cruelty, with no potential benefit to the employer. *See id.* at 83.

■ Metro–North contends it is entitled to judgment that plaintiff's alleged assailant was not acting within the scope of her employment during the incident and that Metro–North cannot, therefore, be found liable based on a theory of respondeat superior. The Court disagrees. This issue, like others, "[n]ormally ... is a question to be resolved by the jury from all surrounding circumstances." *Id.* at 84 (internal quotation marks omitted). In the instant case, construing the facts in plaintiff's favor, a reasonable jury could interpret the conduct and statements of plaintiff's alleged assailant to be motivated by a desire to protect Metro–North's property and to keep non-employees out of a locked section of the train. Whether the alleged tortfeasor was correct either in her perception of plaintiff or in her understanding of her proper work role is irrelevant, so long as the conduct can reasonably be construed to have been in furtherance of the employer's business. *See Gallose,* 878 F.2d at 84; *see also Lancaster,* 773 F.2d at 817, 819–20. Accordingly, summary judgment in favor of defendants on this issue would be inappropriate.

### 3. *Foreseeability*

■ Metro–North's final argument regarding plaintiff's FELA claim is that it is entitled to judgment that the assault allegedly perpetrated upon plaintiff was not foreseeable to Metro–North. The Court disagrees. Where a plaintiff seeks to impose liability pursuant to a theory of direct negligence by the carrier, foreseeability is undoubtedly "an essential ingredient" of the claim, since the duty the carrier allegedly negligently breached encompasses only foreseeable events. *Gallick v. Baltimore & O. R. Co.,* 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *see also Syverson v. Consolidated Rail Corp.,* 19 F.3d 824, 826 (2d Cir. 1994); *Gallose,* 878 F.2d at 85. In the instant case, however, plaintiff's FELA claim does not assert direct negligence by Metro–North but, instead, proceeds upon a theory of respondeat superior. Under that theory, the relevant issue is the conduct of the employee in his or her scope of employment, not the conduct of the carrier or the foreseeability of the event to the carrier. *See Lancaster,* 773 F.2d at 818.

Accordingly, summary judgment in favor of Metro–North on this issue would be inappropriate.

### C. *State Law Claims*

Because plaintiff has viable Federal causes of action against defendants (*i.e.,* a § 1983 claim against "Jane Doe" in her personal capacity, and a FELA claim against Metro–North), subject matter jurisdiction over plaintiff's state-law claims exists pursuant to 28 U.S.C. § 1367(a). The Court, therefore, need not address

Metro–North's assertion that plaintiff has failed adequately to establish this Court's jurisdiction over plaintiff's third, fourth, sixth and seventh causes of action.

Plaintiff's remaining arguments concern plaintiff's common-law claims against Metro–North for direct and vicarious negligence (Count 3) and vicarious intentional tort (Count 4). As to both claims, Metro–North makes assertions essentially duplicative of some of those made regarding plaintiff's FELA claims, i.e., that (i) plaintiff's alleged assailant was not acting within the scope of her employment, and (ii) the assault was not foreseeable by Metro–North.

To the extent Courts 3 and 4 are premised upon a theory of respondeat superior, the Court rejects Metro–North's arguments. Even discounting the more lenient standard employed in addressing FELA claims on a motion for summary judgment, plaintiff has raised a genuine issue of material fact as to whether plaintiff's assailant was acting within the scope of her employment. As to the foreseeability of the assault to Metro–North, it is possible that, in contrast with a FELA claim, that element is applicable in the common-law respondeat superior context and, in particular, under New York law. See, e.g., First Interregional Equity Corp. v. Haughton, 805 F.Supp. 196, 202 (S.D.N.Y.1992). It has not yet, however, been determined in the instant case which state's law should apply to plaintiff's common law claims (e.g., that of New York or Connecticut) and Metro–North has not, moreover, explained the status of the law in either jurisdiction as to this issue. Accordingly, Metro–North's motion as to those particular claims must be denied at this time.

■ By contrast, summary judgment is appropriate with respect to plaintiff's claim in Count 3 for direct negligence by Metro–North. The element of foreseeability clearly does apply to a common-law claim for direct negligence. See, e.g., Rodriguez v. United Transp. Co., 246 A.D.2d 178, 180–81, 677 N.Y.S.2d 130 (1st Dep't 1998); Detone v. Bullit Courier Serv., Inc., 140 A.D.2d 278, 280, 528 N.Y.S.2d 575 (1st Dep't 1988); Stewart v. Federated Dep't Stores, Inc., 234 Conn. 597, 610–11, 662 A.2d 753 (Conn.1995). Thus, Metro–North could only be found directly negligent if plaintiff ultimately proves Metro–North knew or should have known the assailant was the type of person who might commit an assault. Id. Plaintiff has failed to raise a genuine issue of material fact as to that issue. No evidence has been proffered that Metro–North was put on notice of the potential for its employee to assault someone. Absent such notice, Metro–North cannot be found to have acted negligently. Accordingly, summary judgment in favor of Metro–North as to this portion of Count 3 is appropriate.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is hereby GRANTED in part and DENIED in part. The parties shall appear for a pre-trial conference before this Court at the United States Courthouse, 500 Pearl Street, New York, New York, in Courtroom 18B, on March 12, 1999, at 9:30 a.m. Should plaintiff wish to name Samantha Byrd as a defendant in this action or amend the complaint in any other respect, a motion for leave to amend the complaint absent consent shall be due January 29, 1999; opposition, if any, shall be due February 19, 1999; and a reply, if any, shall be due February 26, 1999.

**SO ORDERED.**